UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NICOLAS ASFOURI, Plaintiff, -v- GETTY IMAGES (US), INC., Defendant. | : | 26cv632 (DLC) OPINION AND ORDER |

APPEARANCES:

For plaintiff Nicolas Asfouri:

William Dunnegan
Richard Weiss
Dunnegan & Scileppi LLC
437 Madison Avenue, 24th Floor
New York, New York 10022

For defendants Getty Images (US), Inc.:

Nancy E. Wolff
Leo M. Lichtman
Cowan, DeBaets, Abrahams, & Sheppard LLP
60 Broad Street, 30th Floor
New York, New York 10004

DENISE COTE, District Judge:

The defendant Getty Images (US), Inc. ("Getty") has moved to dismiss this copyright action. Getty holds a license with Agence France-Presse ("AFP"), a French news agency, to publish AFP photographs for their joint financial benefit. The plaintiff Nicolas Asfouri is a professional photographer who once worked for AFP and had licensed his photographs to AFP. Asfouri asserts that Getty violated his rights during two months

in 2023 by continuing to offer his photographs for license after he notified Getty that he owned their copyrights. For the following reasons, Getty's motion to dismiss is granted.

## **Background**

The following facts are alleged in the First Amended Complaint ("FAC") and its attachments.[1] This Opinion summarizes only the facts necessary to decide this motion.

In 2003, AFP entered into a partnership with defendant Getty to monetize AFP's photographs and share the revenues generated. As part of the partnership, AFP gave Getty access to over 20 million photographs, and Getty provided the marketing and licensing infrastructure required for their monetization. The AFP-Getty partnership continues to this day.

Plaintiff Nicolas Asfouri is a professional photographer who, for roughly two decades from March 2001 to April 2023, took photographs for AFP. Over the years, he took more than 40,000 photographs for AFP.

Asfouri first worked as a freelancer for AFP from March 2001 to January 2005. Then he became an AFP staff photographer

[1] In reviewing a motion to dismiss for failure to state a claim, the court "may consider documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." United States v. Strock, 982 F.3d 51, 63 (2d Cir. 2020) (citation omitted).

in the Lisbon, Portugal Bureau from January 2005 to December 2007. The first AFP license of importance to this lawsuit was a license that Asfouri executed when he became AFP's Chief Photographer in the Thailand Bureau, a position he held from March 2008 to April 2016.

On February 19, 2008, Asfouri received an email attaching a "Local Employment Contract" dated February 20, 2008. The body of the email read:

> For all practical purposes, here is your local employment contract which can facilitate the procedures for obtaining the visa after you have signed it. This contract can also be presented to any local organization and communicated to Jum, our office manager. I will take care of your official contract (more complete and reflecting your offshore conditions) later.

The relevant provision from the Contract assigned rights from Asfouri to AFP, and reads:

> 3. AFP has the right to use all negatives, photographs or their derivative works in any way it sees fit in any and all media and manner. This agreement operates as a complete assignment of any and all Copyrights, Trademarks, and any other Intellectual Property Rights, or claims of ownership that you have over the negatives, photographs, or other derivative works of any kind, (whether taken by you for AFP in the future or in the past, and made by any method or technology known or invented hereafter).

(Emphasis added.)

On March 19, 2008, Asfouri arrived at AFP's Regional Headquarters in Hong Kong to discuss this new position. There, he met with AFP's Senior Photo Editor for Asia, who handed him a set of documents, including a "Thailand Employment Agreement" and the Local Employment Contract that he had already received via email. The key provision of the Thailand Employment Agreement regarding an assignment of rights from Asfouri to AFP is similar to the relevant provision in the Contract and reads:

> 8. AFP is free to use all negatives, photographs or their derivative works in any way it sees fit in any and all media and manner. <u>This agreement operates as a complete assignment of any and all Copyrights</u>, Trademarks, and any other Intellectual Property Rights, or claims of ownership that Mr. Asfouri has over the negatives, photographs, or other derivative works of any kind, (<u>whether taken by Mr. Asfouri for AFP in the future or in the past</u>, and made by any method or technology known or invented hereafter). This agreement is <u>meant to be interpreted in the broadest manner possible granting AFP the broadest possible rights</u>.

(Emphasis added.)

Asfouri asked for a few days to review the documents but was told that: (i) they were the same type of document he signed for his employment in Portugal, (ii) Asfouri did not need to read the employment documents before signing, and (iii) AFP needed the employment documents signed immediately to process Asfouri's insurance and allow him to fly to Thailand the next

day. Asfouri then signed both the Thailand Employment Agreement and the Contract "without reading them word for word."

The next document in which Asfouri assigned his rights to AFP was executed when Asfouri moved to work for AFP as a staff photographer in its Beijing, China Bureau. On May 1, 2016, Asfouri signed the "China Employment Agreement," which provided for the assignment of the copyrights in works Asfouri created "for the duration of the copyright." The full assignment provision reads:

> Article 19 – Transfer of Copyrights
>
> 19.1 The Employees acknowledges and agrees that the renumeration which is paid to him already includes the exclusive transfer to AFP of the right to use, copy, represent, modify, distribute as many times as necessary, written documents, pictures, sound recordings, photos, videos, infographics produced by the Employee, whatever the means/method of production, the language, the form (in particular digital), by all the existing or future way of electronic communication, on all existing or future electronic storage devices such as e-database and e-search engine, in order to be directly traded by AFP or through its distributors, partners, subsidiaries to clients for all their current and future products and services. This transfer to AFP is for the whole duration of the copyright and for the entire world."

(Emphasis added.) The China Employment Agreement also provided that "[t]his employment contract cancels and replaces any other prior employment contract signed between AFP and the Employee."

Asfouri held this position in the AFP Beijing Bureau until June 1, 2021.

During an almost two-year period from November 27, 2019 to August 11, 2021, beginning when Asfouri was still employed in the Beijing Bureau, Asfouri registered copyrights with the U.S. Copyright Office in 9,953 of his photographs. These photographs were taken between March 10, 2001 and March 18, 2008 -- a time period that ran from the beginning of Asfouri's time working as a freelancer for AFP to the day before he signed the Thailand Employment Agreement.

After his time in the Beijing Bureau, Asfouri took a one-year, unpaid sabbatical from late 2021 to late 2022. Afterwards, AFP assigned Asfouri to its Mexico City, Mexico Bureau. On November 1, 2022, AFP sent Asfouri a proposed agreement for his new assignment, which included a clause that assigned to AFP "the exclusive right to exploit" any photographs he created "in the performance of [his] duties . . . for the duration of the legal protection of copyright." The clause also specified:

> Furthermore, it is agreed that the assignment granted expressly to the AFP under this contract extends retroactively to all Documents that have been submitted by the Employee, whether used by the AFP or not prior to the effective date of this contract, and that any amount paid under this contract and/or previously, also

> compensates for the assignment of the corresponding rights to such prior Documents.

(Emphasis added.) Asfouri refused to sign the proposed agreement, and AFP refused to modify the assignment clause.

On March 15, 2023, Asfouri sent his first "takedown notice" to AFP. It stated that he would not transfer to AFP the copyrights to photographs he had taken. He demanded that AFP remove over 40,000 of his photographs from its website.

On April 14, 2023, Asfouri sent a "takedown notice" to Getty as well. In this email, Asfouri stated that he is "the sole copyright owner of photographs [he] authored from 2001 to March 2008 . . . and previously authorized and licensed to AFP and its agents (such as Getty) to license [his] photographs." He asked Getty to "take down and stop using my photographs (totaling 10,755)." Getty did not respond to this notice. Then, on April 29, 2023, AFP fired Asfouri.

As of May 20, 2023, Getty was still offering to license at least 12,422 of Asfouri's photographs (the "May 20 Photographs"). On June 20, Asfouri sent a second "takedown notice" to Getty. Getty removed Asfouri's photographs around June 20.

In 2024, Asfouri commenced an action against AFP in a Portuguese court seeking a declaration that he owned the

copyrights to his photographs and that the Thailand Employment Agreement did not assign those copyrights to AFP. On August 14, 2025, following a trial, the Portuguese court ruled that it lacked jurisdiction to decide the matter. On March 23, 2026, this decision was affirmed on appeal. The Portuguese appellate court suggested that France, where AFP is headquartered, may be a more appropriate forum to litigate this dispute.

On January 23, 2026, Asfouri filed this action against Getty, its holding company Getty Images, Inc., and one thousand unnamed Getty customers. Asfouri did not include AFP in the lawsuit. Getty and its holding company Getty Images, Inc. filed a motion to dismiss on April 6, at which point Asfouri was given the opportunity to amend his complaint and warned that it was unlikely he would have a further opportunity to amend.

On April 27, 2026, Asfouri filed the FAC against Getty only. The FAC brings two causes of action against Getty for failing to remove Asfouri's photographs from its website during the two months after it received his April 14, 2023 takedown notice. It alleges that: (i) Getty infringed 9,953 of Asfouri's registered copyrights, in violation of 17 U.S.C. § 501, by continuing to offer to license the photographs, and (ii) Getty provided false copyright management information ("CMI") in connection with the May 20 Photographs, in violation of 17

U.S.C. § 1202(a), by providing consumers with Terms and Conditions that assumed its right to license the May 20 Photographs. Asfouri seeks statutory damages pursuant to 17 U.S.C. §§ 504 and 1203, and an injunction barring future violations.

On May 15, Getty renewed its motion to dismiss for failure to state a claim. Asfouri opposed the motion on June 2. Getty filed its reply on June 9, and the motion became fully submitted.

## Discussion

Getty's motion to dismiss argues that the FAC fails to state a claim for two reasons. They are that Asfouri had assigned the copyrights in his photographs to AFP, and that Getty had a licensing agreement with AFP that permitted Getty to offer the photographs for licensing. It is correct.[2]

To defeat a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Doe v. Franklin Square Union Free School Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678

[2] Getty also argues that the FAC must be dismissed for failure to join AFP, which is a necessary party, and because this action is time-barred. It is unnecessary to reach these issues.

(2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678). In determining if a claim is sufficiently plausible to withstand dismissal, a court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Doe, 100 F.4th at 94 (citation omitted).

I. Copyright Infringement

In his first cause of action, Asfouri contends that Getty infringed 9,953 of Asfouri's copyrights by offering Asfouri's photographs for license during the two-month period between receiving a takedown notice from him on April 14, 2023 and removing his photographs from its website on June 20, 2023. "To state a claim for copyright infringement, a plaintiff must allege both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." Spinelli v. Nat'l Football League, 903 F.3d 185, 197 (2d Cir. 2018) (citation omitted). Getty moves for dismissal of the infringement claim on the ground that Asfouri did not plausibly allege either element. It is correct.

A. Copyright Ownership

Beginning with ownership, Asfouri concedes that, on March 19, 2008, he signed a Thailand Employment Agreement with his long-time employer, AFP, and that paragraph 8 of the Agreement effected "an assignment of the complete bundle of exclusive rights," including the copyrights, in the photographs he created to AFP. This assignment effected a transfer of Asfouri's ownership rights to AFP and defeats this claim.

Under New York law,[3] "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent and the best evidence of what parties to a written agreement intend is what they say in their writing." Donohue v. Cuomo, 38 N.Y.3d 1, 12 (2022) (citation omitted). A court interpreting a contract under New York law is "bound, first and foremost, by the terms' plain meaning." Bank of New York Tr. Co. v. Franklin Advisers, Inc., 726 F.3d 269, 280 (2d Cir. 2013). "[A] contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement

[3] Although the Thailand Employment Agreement contains a choice-of-law provision indicating that it "shall be governed and construed in accordance with Hong Kong law," the parties cite New York law in their briefs to interpret the Agreement and federal law to address the "fraud in the execution" doctrine. That is "sufficient to establish choice of law." Chau v. Lewis, 771 F.3d 118, 126 (2d Cir. 2014) (citation omitted).

itself, and concerning which there is no reasonable basis for a difference of opinion." Donohue, 38 N.Y.3d at 13 (citation omitted). If the terms of the contractual language are clear or unambiguous, that clarity "obviates a need to consider extrinsic evidence." Franklin Advisers, 726 F.3d at 280.

The assignment clause is unambiguous with regards to the duration of the assignment. It reads:

> 8. AFP is free to use all negatives, photographs or their derivative works in any way it sees fit in any and all media and manner. This agreement operates as a complete assignment of any and all Copyrights, Trademarks, and any other Intellectual Property Rights, or claims of ownership that Mr. Asfouri has over the negatives, photographs, or other derivative works of any kind, (whether taken by Mr. Asfouri for AFP in the future or in the past, and made by any method or technology known or invented hereafter). This agreement is meant to be interpreted in the broadest manner possible granting AFP the broadest possible rights."

(Emphasis added.) The "plain meaning" of the clause indicates that, by signing the Agreement, Asfouri executed "a complete assignment of any and all Copyrights" in "photographs . . . taken by [Plaintiff] for AFP in the future or in the past" to AFP. It does not impose any temporal limit on the assignment. The provision even notes that, should there be any ambiguity, that "[t]his agreement is meant to be interpreted in the

broadest manner possible granting AFP the broadest possible rights."

Nevertheless, Asfouri urges that the assignment clause is time-limited. Asfouri argues that three words -- "[t]his agreement operates" -- function to limit this self-proclaimed "broadest possible" assignment to "the duration of the agreement".[4] This reading is inconsistent with the phrase's plain meaning -- namely, that the Thailand Employment Agreement effected a broad assignment. Asfouri does not cite any authority to indicate that the phrase "[t]his agreement operates" is a term of art that imposes a temporal limit when the plain language of the document does not support that construction.

Asfouri next presents a smorgasbord of arguments for the Agreement's unenforceability, drawing from United States law, Thai law, and Portuguese law. For example, he contends that the Thailand Employment Agreement is void under the "fraud in the execution" doctrine in federal law.

[4] Asfouri claims that the assignment provision in the March 19, 2008 Thailand Employment Agreement expired, at the latest, when he signed the May 1, 2016 China Employment Agreement. He does not explain, however, how a similar provision in the China Employment Agreement entitled "Transfer of Copyrights" -- in which he acknowledged that his renumeration "already includes the exclusive transfer to AFP of the right to use, copy, represent, modify, [and] distribute" his photographs -- supports his claim.

"Fraud in the execution occurs where there is a misrepresentation as to the character or essential terms of a proposed contract, and a party signs without knowing or having a reasonable opportunity to know of its character or essential terms," such as when a party "surreptitious[ly] substitut[es] one paper for another." Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 31-32 (2d Cir. 1997) (quoting Restatement (Second) of Contracts § 163 cmt. a (1981)). "In order to prevail on such a defense, a party must show excusable ignorance of the contents of the writing signed." Id. at 32 (citation omitted). Critically, the defense "does not relax the basic responsibility of contracting parties to review a document before signing it." Id. at 34.

Asfouri's reliance on this doctrine fails. Taking the factual allegations in the FAC as true, there is no "excusable ignorance" here. Asfouri had possession of the Local Employment Contract, which contained an assignment clause similar to that in the Agreement, for 29 days before he was presented with both documents and asked to sign them. The FAC reveals that Asfouri did not read them "word for word" before doing so. Even if asked to return the documents that same day, Asfouri had the ability to read them. After all, the Agreement is only four-pages long. It is a "basic responsibility" of a contracting

party to read the document he signs, and the FAC fails to plead circumstances that would absolve him from that responsibility. Accordingly, he is bound by the Agreement's terms.

Asfouri's final arguments draw upon Thai and Portuguese law to contend that the Thailand Employment Agreement is unenforceable. The Agreement, however, selects Hong Kong law as the governing law and in their briefing the parties have relied on New York law. There is no reason to explore further whether Thai or Portuguese law might govern this matter.

B. Infringement

The FAC also fails to plausibly allege that Getty infringed the copyrights in the photographs he created. The FAC acknowledges that Getty had a license with AFP which permitted it to publish the images it received from AFP. The FAC does not allege that Getty exceeded the terms of that license.

The Second Circuit has explained that, "when the existence of a license is not in question," as is the case here, "a copyright holder must plausibly allege that the defendant exceeded particular terms of the license." Yamashita v. Scholastic, Inc., 936 F.3d 98, 105 (2d Cir. 2019). The FAC, however, does not allege that Getty exceeded the bounds of its agreement with AFP -- to which he was not a party -- when Getty offered the photographs at issue for license. To the contrary,

Asfouri concedes that he "consented" to Getty's use of his photographs for approximately 20 years, from the beginning of the Getty-AFP partnership in 2003 until he "chose to revoke that consent on April 14, 2023."

Nor does the FAC plausibly allege that Asfouri had the authority to revoke Getty's license to distribute his photographs. Asfouri was not a party to the Getty-AFP partnership. Nor does he allege any facts or theory to support an argument that the partnership or licensing agreement could be dissolved by an individual photographer's revocation of consent. Accordingly, the infringement claim must be dismissed.

II. Providing False CMI

The FAC next contends that Getty violated 17 U.S.C. § 1202(a), which bars providing false copyright management information, or CMI. It asserts that Getty violated this law by offering to license Asfouri's photographs to consumers when it did not have the authorization to do so. It alleges that the specific false CMI at issue was language contained in Getty's Terms and Conditions that indicated, "among other things, the purpose for which Getty would license each of the [photographs], the geographic area in which the license would be offered, and the dollar amount for a license."

Section 1202(c) defines CMI as:

> any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:
>
> . . .
>
> (6) Terms and conditions for use of the work.

Section 1202(a) then provides that:

> (a) No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement--
>
> (1) provide copyright management information that is false . . . .

Thus, in order to plead a violation of § 1202(a)(1), the FAC must plausibly allege both that Getty "knowingly" provided false CMI and that Getty did so "with the intent to induce, enable, facilitate, or conceal infringement."

The FAC fails to plead this claim. Asfouri concedes that "[w]hether Getty provided false CMI will turn on whether AFP owned the copyrights." As already explained, the FAC has failed to plead that Asfouri owned the copyright. Instead, the documents on which it relies indicate that he assigned the copyrights to AFP when he executed the Thailand Employment Agreement. Thus, the FAC fails to plead that Getty provided false CMI.

The FAC also does not plausibly plead that Getty acted with the requisite scienter. Getty was acting pursuant to its license with AFP. It was not a party to the Thailand Employment Agreement between Asfouri and AFP. And, even if Getty obtained a copy of the Thailand Employment Agreement no later than May 2, 2023, as the FAC alleges "[u]pon information and belief," reading the Agreement would not inform Getty that it did not have the authorization to license the photographs. The plain meaning of the Agreement's assignment clause indicates that Asfouri executed a complete assignment of all copyrights in the photographs he had taken and would take for AFP.

While Getty presents several additional arguments to support dismissal of this claim, it is unnecessary to discuss them. The FAC fails to plead a violation of § 1202(a).

## Conclusion

Getty's May 15, 2026 motion to dismiss is granted. The Clerk of Court shall enter judgment for the defendant and close the case.

Dated: New York, New York
August 6, 2026

DENISE COTE
United States District Judge